**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

JANET VÁZQUEZ-VELÁZQUEZ, et al.,

    Plaintiffs,

       v.

                            CIVIL NO.: 15-1727 (MEL)

PUERTO RICO HIGHWAY AND
TRANSPORTATION AUTHORITY, et al.,

    Defendants.

**OPINION AND ORDER**

**I.   Procedural Background**

The plaintiffs here are sixty-nine employees of Puerto Rico Highway and Transportation Authority ("PRHTA") ("plaintiff employees") as well as their spouses and conjugal partnerships (collectively "plaintiffs"). ECF No. 21, ¶¶ 6, 13–14. The defendants are PRHTA and PRHTA's Executive Director, Carmen Villar Prados ("Villar Prados") in her official capacity (collectively "defendants"). Id. ¶¶ 7–8.  On August 18, 2015, the plaintiffs filed an amended complaint pursuant to 42 U.S.C. § 1983 alleging the defendants violated their rights of procedural due process, substantive due process, and equal protection, as well as the takings clause, the contracts clause, and various provisions of Puerto Rico law. Id. Currently pending before the court are the defendants' motion to dismiss (ECF No. 28), the plaintiffs' response (ECF No. 34), the defendants' reply (ECF No. 43), and the plaintiffs' sur-reply (ECF No. 49).

## II.   Legal Standard

The Supreme Court held in <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007), that in order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "a plausible entitlement to relief." <u>Rodríguez–Ortiz v. Margo Caribe, Inc.</u>, 490 F.3d 92, 95 (1st Cir. 2007) (quoting <u>Twombly</u>, 550 U.S. at 559). "Plausible, of course, means something more than merely possible, and gauging a pleaded situation's plausibility is a 'context-specific' job that compels us 'to draw on' our 'judicial experience and common sense.'" <u>Schatz v. Republican State Leadership Committee</u>, 669 F.3d 50, 55 (1st Cir. 2012) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009)).

This requires a two-pronged analysis. "First, the court must sift through the averments in the complaint, separating conclusory legal allegations (which may be disregarded) from allegations of fact (which must be credited)." <u>Rodríguez-Reyes v. Molina-Rodríguez</u>, 711 F.3d 49, 53 (1st Cir. 2013). "Similarly, a court does not accept as true allegations that while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory and the factual." <u>Air Sunshine, Inc. v. Carl</u>, 663 F.3d 27, 33 (1st Cir. 2011) (internal quotations omitted). "Second, the court must consider whether the winnowed residue of factual allegations gives rise to a plausible claim of relief." <u>Id.</u> In addition to the complaint, the court can consider "(a) 'implications from documents' attached to or fairly 'incorporated into the complaint,' (b) 'facts' susceptible to 'judicial notice,' and (c) 'concessions' in plaintiff's 'response to the motion to dismiss.'" <u>Schatz</u>, 669 F.3d at 55 (1st Cir. 2012) (quoting <u>Arturet-Vélez v. R.J. Reynolds Tobacco Co.</u>, 429 F.3d 10, 13 n.2 (1st Cir. 2005)). "We appropriately draw on our 'judicial experience and common sense' in evaluating a complaint, but we may not disregard factual allegations 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" <u>Manning</u>

v. Boston Medical Center Corp., 725 F.3d 34, 43 (1st Cir. 2013). "The relevant question for a district court in assessing plausibility is not whether the complaint makes any particular faction allegations but, rather, whether 'the complaint warrant[s] dismissal because it failed *in toto* to render plaintiffs' entitlement to relief plausible.'" Id., at 55 (quoting Twombly, 550 U.S. at 569 n.14).

## III.    Factual Background

As noted above, the plaintiffs here are sixty-nine employees of PRHTA plus their spouses and conjugal partnerships. ECF No. 21, ¶¶ 6, 13–14. Fifteen of the plaintiff employees hold the position of Project Supervisors, and the remaining fifty-four are Project Administrators.[1] Id. In comparison to their colleagues, the plaintiff employees work outside the standard business hours— including weekends and holidays—and under sometimes dangerous conditions in the "field." Id. ¶¶ 15–18. Despite these differences, the plaintiff employees were originally paid the same amount as their colleagues. Id. ¶¶ 17–18. When PRHTA began losing its workforce to retirement, they attempted to find a way to incentivize applications to the plaintiff employees' positions. Id. ¶¶ 19– 21. PRHTA tested multiple compensation schemes over a period of years. Id. ¶ 21. Eventually PRHTA settled on a compensation program that paid additional compensation to those in the plaintiff employees' position. Id. ¶¶ 22–24. On November 28, 2011, PRHTA codified this compensation in Regulation 02-017 "Compensation Program for Management of Construction Projects" ("Regulation"). Id. ¶ 23. The Regulation recognized that those in the employees' position performed additional work meriting additional compensation. Id. ¶¶ 26–27.

---

[1] In the motion to dismiss, the defendants object to the plaintiff employees calling themselves "engineers." ECF No. 28, 3 n.3. The plaintiffs concede that the job qualifications are not at issue here. ECF No. 34, 11 n. 4. The relevance to the title of "engineer" is not readily apparent.

On June 17, 2014, the Puerto Rico Legislature adopted Law Number 66, the "Government of the Commonwealth of Puerto Rico Special Fiscal and Operational Sustainability Act" ("Law 66"). The section entitled "Declaration of Public Policy," reads in relevant part:

> A state of emergency is hereby declared to attain Puerto Rico's fiscal and economic recovery after the downgrading of its credit rating and decrease in revenues that affect the Commonwealth's liquidity … a plan is hereby devised to deal with the consequences thereof and to establish a structured management that allows the Island to meet its obligations. … The public policy set forth in this Act is aimed at restoring the credit of the Commonwealth of Puerto Rico by eliminating the General Fund's deficit within a short timeframe and improving the fiscal condition of public corporations, without resorting to the layoff of career or regular employees, affecting critical functions of government agencies that provide security, education, healthcare, or social work services.

Law 66, § 3. Law 66 prohibited the provision of increased bonuses or salaries. ECF No. 21, ¶ 31. On October 2, 2014, in response to this law, PRHTA issued Informative Bulletin 2015-007, "Measures for Expense Reduction in Compliance with the Articles 9, 10, 11 and 17 of [Law 66]" ("Bulletin"). Id. ¶ 32. The Bulletin eliminated the additional compensation codified in the Regulation, both prospectively and retroactively to July 1, 2014. Id. ¶¶ 36, 39. The plaintiff employees' work hours and duties were not correspondingly reduced. Id. ¶ 38.

The plaintiff employees first sought redress via letter to PRHTA's then-Executive Director, who, after meeting with their representatives, indicated that he required two weeks to look into the matter. Id. ¶¶ 43–45. When the plaintiff employees had received no new information after two weeks elapsed, they sent a second letter to the Executive Director. Id. ¶ 49. The plaintiff employees' also sent a letter to the President of PRHTA's Board of Directors requesting a meeting, but he refused. Id. ¶¶ 47–48. Over a month later, the plaintiff employees sent the President another letter. Id. ¶ 52. A day later, an unidentified group presented themselves at the President's office and met with both the President and Executive Director. Id. ¶¶ 55, 57. It appears from the amended complaint that at some point during this meeting, the President requested a legal opinion of some

sort from the group, and the group in turn requested a legal opinion from PRHTA. Id. ¶ 55. The President indicated that he would be willing to grant plaintiffs time in front of the Board of Directors, and that he would "vote in favor" (in favor of what exactly is not clear) and try to garner an additional vote. Id. ¶ 56. The Executive Director told the group that a consultation had been made to the Office for Management and Budget (OMB), and that he would get the position of this agency in order to determine the next step. Id. ¶¶ 57–58. When the Executive Director either quit or was removed three months following the original letter, the issue had still not been addressed. Id. ¶ 46. Plaintiffs then sent a letter to the new Executive Director, Villar Prados. Id. ¶ 59. Over a month after the letter was sent, she met with the plaintiff employees, indicating that she was going to have a meeting with the former Executive Director. Id. ¶ 61. Villar Prados further promised to inquire about correspondence with the OMB, and if it had not been sent, she would send it. Id. Plaintiffs indicate that, up to the filing of the amended complaint, they had not received any further information. Id. ¶¶ 62–63.

## IV.   Pullman Abstention

The defendants first move to dismiss the entire amended complaint under the Pullman abstention doctrine.[2] "It is well established that '[a]bstention from the exercise of federal jurisdiction is the exception, not the rule.'" Ford Motor Co. v. Meredith Motor Co., 257 F.3d 67, 71 (1st Cir. 2001) (quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813 (1976)). One such exception is Pullman abstention under Railroad Commission v. Pullman Co., 312 U.S. 496, (1941). Pullman abstention is appropriate when there is substantial uncertainty over the meaning of the state law at issue and clarification from the state court could obviate the need for a federal constitutional ruling. See Ford Motor Co., 257 F.3d at 71. "When the federal claim is not

---

[2] Contrary to defendants' request, Pullman abstention does not require the dismissal of a complaint, but merely a stay of federal proceedings. Public Service Co. of New Hampshire v. Patch, 167 F.3d 15, 24 (1st Cir. 1998).

entangled with complicated unresolved state law questions," however, "abstention is inappropriate." Rivera-Puig v. Garcia-Rosario, 983 F.2d 311, 22 (1st Cir. 1992). "A federal court should not abstain simply to give a state court the first opportunity to vindicate federal rights." Id. Ultimately, the purpose of Pullman abstention is to serve "the dual aims of avoiding advisory constitutional decisionmaking, as well as promoting the principles of comity and federalism by avoiding needless federal intervention into local affairs." Pustell v. Lynn Pub. Sch., 18 F.3d 50, 53 (1st Cir. 1994).

Here, the defendants have failed to point to any uncertainty over either of the state actions at issue and have thus also failed to illustrate how any reasonable resolution of these issues could avoid the need for a decision in this case.  The defendants argue that Pullman abstention is appropriate because "this case requires the interpretation of unclear Commonwealth law, regarding the manner in which the Informative Bulletin 2015-007 of October 2, 2014 – which has never been interpreted by [the Public Service Appellate Commission] or by any Commonwealth court before, that we are aware of – is consistent with existing Commonwealth law, in particular Law 66." ECF No. 28, at 9–10. The defendants go on to warn that a ruling by this court could create a conflict with the Commonwealth courts. Highlighting the purposes of Law 66 in addressing what it declares as a fiscal emergency, the defendants claim that the risk of conflict is particularly problematic due to the interests at stake here. Id. at 15. At no point, however, do the defendants clarify the nature of the uncertainty in Law 66. In their reply to the opposition to the motion to dismiss, the defendants say that "Commonwealth law is unclear as to whether the manner by which PRHTA interpreted § 11(c) of Law 66 as to the proper meaning of 'special monetary compensation' to include as bonuses what the plaintiffs claim is salary is a proper interpretation of Law 66." ECF No. 43, 2. Similarly, the defendants argue that an interpretation by Commonwealth courts could find that the additional compensation is a 'bonus' or 'special economic benefit' under Law 66.  Id. at 3. This interpretation,

6

according to the defendants, would mean that plaintiffs have no property interest in the additional compensation under Law 66, thus the Bulletin does not impair the obligation of contracts as prohibited under the Constitution. Id.

The prerequisite for Pullman abstention is that the law itself is ambiguous and that allowing the local courts to resolve this ambiguity would avoid an unnecessary federal decision. The defendants merely allege, by conclusory statement, that Law 66 is unclear without explaining in what respects. ECF No. 28, at 9–10. The section of Law 66 on increase of economic benefits or special monetary compensations specifically delineates seven conditions that are deemed an economic benefit and seven conditions that are deemed special monetary compensation. Law 66, § 11. This section further outlines five conditions that are not an increase of economic benefits or special monetary compensation. Id. The defendants do not identify which provision or exception is unclear or whether they are asserting the entirety of this section is unclear. The issue of what creates a property right will be addressed more fully below, but the basic test is whether the plaintiffs' have a "legitimate claim of entitlement" to the compensation that goes beyond "a unilateral expectation." Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). The plaintiffs here are claiming a property interest stemming from the Regulation that codified the additional compensation on November 28, 2011. The property interest determination turns not on whatever appellation is used in Law 66 passed in June 17, 2014, as applied by PRHTA in October of the same year, but rather on the facts and circumstances surrounding the initial provision of the compensation. If the plaintiffs had a property interest in their additional compensation from the Regulation, the deprivation of that interest by either the Puerto Rico legislature or PRHTA would be subject to constitutional protections. In the absence of a showing of actual uncertainty or the effect that local interpretation of Law 66 could have on this case, the court will not abstain merely to give

the Commonwealth courts the first opportunity to vindicate the plaintiffs' federal rights. See <u>Rivera-Puig</u>, 983 F.2d at 22. The motion to dismiss the plaintiffs' amended complaint on <u>Pullman</u> abstention grounds is therefore DENIED.

**V.    Spouses and Conjugal Partnership**

The defendants argue that the plaintiffs have failed to state any viable claims on behalf of the spouses and conjugal partnerships. ECF No. 43, 4–5. Article III of the U.S. Constitution gives standing to sue in federal court to those who have suffered an "injury in fact to a cognizable interest" that is "causally connected to the challenged conduct." <u>Pagán v. Calderon</u>, 448 F.3d 16, 27 (1st Cir. 2006) (internal quotation omitted). The conjugal partnership, recognized in limited jurisdictions including Puerto Rico, is the community property of a marriage. <u>Rodríguez Hernández v. Almodóvar</u>, 631 F. Supp. 960, 961 (D.P.R. 1986). Spouses and conjugal partnerships only have standing to sue under section 1983 when the allegedly unconstitutional conduct was directed at the spouse, the conjugal partnership, or the familial relationship. <u>Feliciano v. Rivera-Sanchez</u>, No. CIV. 11-1672 JAG, 2012 WL 4471644, at *2-3 (D.P.R. Sept. 26, 2012); <u>see also</u> <u>Mulero Abreu v. Oquendo-Rivera</u>, 729 F. Supp. 2d 498, 511 (D.P.R. 2010); <u>Torres v. United States</u>, 24 F. Supp. 2d 181, 183-84 (D.P.R. 1998).

Here the spouses are listed only in the parties section of the amended complaint alongside their plaintiff employee counterpart. ECF No. 21, ¶ 6. Additionally, one line in the factual narrative section states, "[t]he rest of the plaintiffs are the respective spouses of these project supervisors and Administrators." <u>Id.</u> ¶ 14. The only other mention of the spouses is in the claims under Puerto Rico law and the prayer for relief. <u>Id.</u> ¶ 132, (n). The conjugal partnerships are cited even less; they are only mentioned in the parties section of the amended complaint. <u>Id.</u> ¶ 6. The amended complaint does not contain any specific factual allegations that the defendants' actions were directed against

the spouses or the conjugal partnerships. Accordingly, with respect to the claims of the plaintiff employees' spouses and the conjugal partnerships under section 1983, the defendants' motion to dismiss is hereby GRANTED.

## VI.   Procedural Due Process

The Fourteenth Amendment forbids a state to "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. This right contains both a substantive and a procedural component. Pagán v. Calderon, 448 F.3d 16, 32 (1st Cir. 2006). To establish a procedural due process claim, the plaintiffs must allege that they were deprived of a property interest by defendants acting under color of state law and without the availability of a constitutionally adequate process. Maymi v. Puerto Rico Ports Auth., 515 F.3d 20, 29 (1st Cir. 2008). The defendants allege that the plaintiffs' procedural due process claim should be dismissed because they have not sufficiently pleaded a protected property interest, and they failed to take advantage of available post-deprivation administrative procedures. ECF No. 28, 23. The plaintiffs contend that they have a property interest their salaries, including the compensation at issue, and that the administrative process was neither available to them nor constitutionally sufficient. ECF No. 34, 24–26.

a.     Property Interest

As noted above, at the most basic level, a property interest requires plaintiffs have more than a "unilateral expectation" or an "abstract need or desire" for a benefit, but rather that the plaintiffs have a "legitimate claim of entitlement." Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972). Protected property interests are not created by the Constitution, but rather "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Bd. of Regents, 408 U.S. at 577. "[T]he question of whether a public

employee possessed a protectable property interest in a particular job is governed by local law and the terms and conditions of the employment arrangement." Cruz v. Puerto Rico Power Authority, 878 F.Supp.2d 316, 329–30 (D.P.R. 2012). Although the plaintiffs here have not been terminated, the existence of a property interest should be governed by the same sources.

The most compelling cases cited by the defendants occur at the summary judgment phase at which point plaintiffs have an obligation to identify the legal basis for their property interest. See Zayas Rodríguez v. Hernández, 748 F.Supp. 47, 55–56 (D.P.R. 1990) (dismissing the due process claim at summary judgment because, among other deficiencies, the plaintiffs "provide us with no guidance as to the specific source of their alleged property right"); González Piña v. Rodríguez, 278 F.Supp.2d 195, 206 (D.P.R. 2003) (dismissing the due process claim at summary judgment). At the motion to dismiss stage, however, it is sufficient to allege facts showing that plaintiffs have more than a unilateral expectation to the income. See Cruz v. Puerto Rico Power Authority, 878 F.Supp.2d 316, 329–30 (D.P.R. 2012) (denying a motion to dismiss for lack of property interest where plaintiff alleged facts that he was awarded a promotion that included a higher salary, but was not actually promoted within a reasonable time). The plaintiff is not obligated at this stage to fully plead the law providing them a property interest; they only have to plead facts that would give their claim of a property interest sufficient plausibility. See Johnson v. City of Shelby, Miss., 135 S.Ct. 346, 347 (2014).

The amended complaint meets that burden. The plaintiffs allege that, over a period of years PRHTA sought to establish a compensatory scheme that would recognize the effort of plaintiff employees. ECF No. 21, ¶ 21. Upon deciding on the final compensatory scheme, PRHTA memorialized the addition compensation in a Regulation. Id. ¶ 23–24. Plaintiffs worked under this compensatory scheme for at least two and a half years. Id. ¶ 23, 30, 32–33, 36. These facts, like the

promise of a raise in <u>Cruz</u>, 878 F.Supp.2d at 329–30, are sufficient to give rise to a plausible claim that they had something closer to a legitimate claim of entitlement than to a unilateral expectation.

  *b. Adequacy of the Process*

  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" <u>Mathews v. Eldridge</u>, 424 U.S. 319, 333–35 (1976) (quoting <u>Armstrong v. Manzo</u>, 380 U.S. 545, 552 (1965)). In termination cases, public employees who have a property interest in continued employment have the right to at least "oral or written notice of the charges against him [or her], an explanation of the employer's evidence, and an opportunity to present his [or her] side of the story." <u>Cleveland Board of Education v. Loudermill</u>, 470 U.S. 532, 538 (1985). This entails "some kind of a hearing and an opportunity to respond to the allegations against the employee." <u>López–Quiñonez v. P.R. Nat'l. Guard</u>, 488 F.Supp.2d 112, 119 (D.P.R. 2007) (internal quotations and citation omitted).

  "When the termination at issue is 'in good faith directed at positions rather than individuals,' however, the hearing contemplated by the Supreme Court's due process precedent loses its relevance." <u>Whalen v. Mass. Trial Court</u>, 397 F.3d 19, 25 (1st Cir. 2005) (internal citation omitted) (quoting <u>Hartman v. City of Providence</u>, 636 F.Supp. 1395, 1409–10 (D.R.I. 1986)). This exception applies when the termination is the result of reorganization or cost-cutting measures. <u>United Auto v. Fortuño</u>, 677 F.Supp.2d 530, 538 (D.P.R. 2009) (holding no pre-deprivation hearing was required when termination was pursuant to a Puerto Rican law that required the termination of up to 40,000 public employees as a measure to address the fiscal emergency). "'In such cases, since there are no charges against the employee ... involved, there would be no occasion for a hearing, and it would be idle to hold one.'" <u>Whalen</u>, 397 F.3d at 25 (quoting <u>Kusza v. Maximonis</u>, 363 Pa. 479, 482–83 (1950)). Nevertheless, if the employment measures do not follow procedural

safeguards in the statute, that can be sufficient to create a plausible procedural due process claim. See Acevedo-Concepción v. Irizarry-Méndez, Civ. No. 09-2133 (JAG), 2011 WL 6934791, *5 (D.P.R. Dec. 29, 2011); Pagán-Quiñones v. Irizarry-Méndez, Civ. No. 10-1378 (JAG), 2011 WL 2712525, *4 (D.P.R. July 12, 2011).

Law 66's stated purpose was "to declare a state of fiscal emergency; devise a plan to deal with the consequences of the fiscal and economic crisis of the downgrading of Puerto Rico's credit rating; establish a structured management to address this situation; … [and] establish rules and restrictions on increasing economic benefits and special monetary compensations …." ECF No. 21-1, 1. The Bulletin "was the procedural mechanism employed by the PRHTA to implement its interpretation of the Law 66 mandates." ECF No. 21, ¶ 33. Pursuant to this Bulletin, the plaintiff employees' compensation was reduced. Id. ¶ 36. The plaintiffs have not alleged that PRHTA's actions were aimed at individuals, as opposed to the class of Project Administrators and Supervisors. The compensation reductions, in attempted compliance with the Law 66 mandate, therefore potentially fall under the purview of the cost-cutting measures exception, removing the requirement of a pre-deprivation hearing. However, the plaintiffs allege that the Bulletin's reductions were not implemented in accordance with the Law 66 mandate, but rather deprived plaintiffs' of compensation not authorized by the statute. ECF No. 21, ¶¶ 31, 73–76. At this early stage, alleging that the defendants' failed to follow the Law 66 mandate, supported by facts in the complaint, is sufficient to create a plausible procedural due process claim. The defendants' motion to dismiss the plaintiffs' procedural due process claims are accordingly DENIED.

**VII.    Substantive Due Process**

The appropriate standard for analyzing substantive due process claims turns on the nature of the actor, executive or legislative. The plaintiffs here are not alleging that the Puerto Rico

legislature violated their right to substantive due process in Law 66. ECF No. 21, ¶¶ 81–82. They instead argue that it is the interpretation of Law 66 by PRHTA, an executive entity, that violated these constitutional rights. Id. at ¶¶ 80–82. Where plaintiffs allege executive misconduct, they "must plausibly allege that the actions taken against him were so egregious as to shock the conscience and that they deprived [plaintiffs] of a protected interest in life, liberty, or property." Gianfrancesco v. Town of Wrentham, 712 F.3d 634, 640 (1st Cir. 2013). This high hurdle is because "[t]he substantive due process guarantee does not … serve as a means of constitutionalizing tort law so as to 'impos[e] liability whenever someone cloaked with state authority causes harm.'" Pagán v. Calderon, 448 F.3d 16, 32 (1st Cir. 2006) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 848 (1998). The framework for considering substantive due process claims must entail "a comprehensive analysis of the attendant circumstances before any abuse of official power is condemned as conscience-shocking." DePoutot v. Raffaelly, 424 F.3d 112, 119 (1st Cir. 2005). The "shock the conscience" test has been described as a culpability spectrum where "negligently inflicted harm is "'categorically beneath the threshold' of a constitutional violation" and at the other end is behavior "'intended to injure in some way unjustifiable by any government interest'" Ramos-Piñero v. Puerto Rico, 453 F.3d 48, 53 (1st Cir. 2006) (quoting Lewis, 523 U.S. at 849) (holding it did not shock the conscience that a municipality failed to prevent the hazard of an open manhole cover that a young boy fell inside and died); see also South Commons Condominium Ass'n v. Charlie Arment Trucking, Inc, 775 F.3d 82 (1st Cir. 2014) (holding it did not shock the conscience to demolish a tornado-damaged condominium before considering more conservative action); González-Fuentes v. Molina, 607 F.3d 864, 880–85 (1st Cir. 2010) (holding that, even though the negative impact was substantial, it did not shock the conscience to reincarcerate prisoners

previously released under an electronic supervision program, some for as many as five years, emphasizing that the Commonwealth had a justifiable interest).

Where the governmental action is the result of deliberation, a substantive due process claim may be successful without a showing of actual malice where the government acts with deliberate indifference. "The Supreme Court's hypothetical archetype for a successful deliberate indifference claim is an individual taken into state custody who is then denied basic human needs such as food and medical care." González-Fuentes, 607 F.3d at 883 (citing Lewis, 523 U.S. at 850–51). That example turns on the understanding that "there is no legitimate interest in ignoring the ward's needs." Id. "'[M]ere violations of state law, even violations resulting from bad faith,' do not invariably amount to conscience-shocking behavior. Rather, conscience-shocking behavior 'must be stunning.'" Pagán, 448 F.3d at 32 (internal citations omitted) (holding it did not shock the conscience for a government-sponsored bank to deny a corporation a loan to which it was entitled).

The defendants move to dismiss the plaintiffs' substantive due process claim because, even assuming they were deprived of a property interest, this deprivation was insufficiently egregious. ECF No. 28, 20. The actions that the plaintiffs allege shock the conscience are that "defendants stopped paying Plaintiffs' complete salaries … but [are] ordering that Plaintiffs keep doing their work as project administrator and supervisors, and to keep to the same duties and obligations … without receiving any compensation for such additional work." ECF No. 21, ¶ 82. The plaintiffs allege that the defendants' actions were "arbitrary and irrational." The plaintiffs concede, however, that Law 66 "declared a state of emergency" for the purpose of "assisting the current government of Puerto Rico in meeting the financial hardships faced as a consequence of the still and most recent economic recession." ECF No. 21, ¶¶ 97, 30. It is from this atmosphere of economic crisis, as detailed at length in the preamble to Law 66 and that the plaintiffs do not dispute, that PRHTA

"prepared the Informative Bulletin in which it issued a series of cost-cutting measures." Id. ¶ 97. The Bulletin appears to have returned the employees' compensation to the level it was at three years previously and amounted to a twenty to thirty percent reduction of the employees' total compensation.

On the culpability spectrum, the plaintiffs allegations are categorically not "unjustifiable by any governmental interest", Ramos-Piñero, 453 F.3d at 53, but rather fall much closer to the negligence end. Even applying the somewhat more lenient deliberate indifference standard, it cannot be said that there was no legitimate interest in cutting costs, as the government was operating in a state of economic emergency. The plaintiffs' amended complaint alleges that PRHTA's response was forbidden by Law 66. Assuming the truth of that statement does not get plaintiffs closer to alleging the requisite egregiousness, because even if the Bulletin reduced the plaintiff employees' salary in violation of Law 66 and even if PRHTA acted in bad faith, these actions were limited to returning the employees' compensation to the same level it was at three years previously, a twenty to thirty percent reduction of the employees' total compensation. If returning freed convicts to their custodial status from as many as five years previous was not sufficiently shocking in González-Fuentes, 607 F.3d at 883–84, it cannot be said that returning plaintiffs to their pay status from three years previous is shocking, particularly in light of the weighty legitimate governmental interests involved. The defendants' motion to dismiss the plaintiffs' substantive due process claims is hereby GRANTED.

## VIII.    Takings Clause

The takings clause prohibits the taking of private property "for public use, without just compensation." U.S. Consts. amend. V.[3]   The clause "is designed not to limit the governmental

---

[3] The Takings Clause was incorporated via the Fourteenth Amendment to apply to the Commonwealth of Puerto Rico. Fideicomiso De La Tierra Del Caño Martin Peña v. Fortuño, 604 F.3d 7, 12 (1st Cir. 2010).

interference with property rights *per se*, but rather to secure *compensation* in the event of otherwise proper interference amounting to a taking." First English Evangelical Lutheran Church of Glendale v. County of Los Angeles, 482 U.S. 304, 315 (1987). There are two forms of governmental taking that require compensation. "The paradigmatic taking … is a direct government appropriation or physical invasion of private property." Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 537 (2005). On the other hand, a "regulatory taking" occurs when "government regulation of private property … [is] so onerous that its effect is tantamount to a direct appropriation or ouster …." Id. A regulatory taking is thus "a restriction on the use of property that went 'too far.'" Horne v. Department of Agriculture, 135 S.Ct. 2419, 2428 (2015). Here there is no allegation that PRHTA or the Commonwealth is limiting the plaintiffs' use of their income. Rather, the contention that we accept as true at this stage, is that PRHTA is entirely depriving the plaintiffs' of a property interest. Thus this case falls into the category of a direct taking.

    The defendants argue that takings clause claim here is not yet ripe for review under Williamson Cty. Regional Planning Com'n v. Hamilton Bank of Johnson City, 473 U.S. 172 (1985). Under Williamson County, "a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." 473 U.S. at 186. This requires a plaintiff to show both that they have received a final decision from the state on the alleged taking and sought compensation through the provided state procedures. Asociación de Subscripción Conjunta del Seguro de Responsabilidad Obligatorio v. Flores Galarza, 484 F.3d 1, 13–14 (1st Cir. 2007). However, the first prong of Williamson County only applies to regulatory taking, not direct takings. Asociación De Subscripción Conjunta Del Seguro De Responsabilidad Obligatorio v. Flores Galarza, 484 F.3d 1, 15 (1st Cir. 2007). Thus, the

plaintiffs here need only plausibly allege that they have sought compensation through the state procedures.

Here the defendants' allege that plaintiffs have failed to take advantage of the forum provided by Law 66, the Public Service Appellate Commission ("PSAC"). Three narrow exceptions have been recognized that allow a plaintiff to bring a takings claim without first seeking compensation. Plaintiff does not claim, under the first two exceptions, that the state remedy here would be inadequate or unavailable, but relies solely on the futility exception. This exception has been "stringently cabined" and requires, at a minimum, that the plaintiff make "one meaningful application" for administrative relief. Gilbert v. City of Cambridge, 932 F.2d 51, 61 (1st Cir. 1991). "A pessimistic prediction or a hunch that further administrative proceedings will prove unproductive is not enough to sidetrack the exhaustion rule." Portela-González v. Secretary of the Navy, 109 F.3d 74, 78 (1st Cir. 1997).

The entirety of the plaintiffs' remedial actions occurred within the hierarchy of PRHTA. The plaintiff employees sent letters to both the then Executive Director and the President of the Board of Directors. ECF No. 21, ¶¶ 43, 47. They met at least twice with the then Executive Director and once with the President. Id. ¶¶ 44, 55–57. The Executive Director indicated that a consultation had been made to the Office from Management and Budget (OMB) and that he would get the position of this agency in order to determine the next step. Id. ¶¶ 57–58. The President indicated that he would be willing to grant plaintiffs time before the Board of Directors. Id. ¶ 56. When the Executive Director either quit or was removed, the plaintiffs sent a letter to his successor, Villar Prados. Id. ¶¶ 46, 60. Villar Prados promised to meet with her predecessor, inquire about the communication with OMB, and, if it had not been sent, send it. Id. ¶ 61. The plaintiffs indicate that, up to the filing of the complaint, they had not received any further information. Id. ¶ 62–63. It is these actions that

plaintiffs point to as constituting their pursuit for administrative relief. The plaintiffs, both in the amended complaint and in their pleadings in response to this motion, never content that they sought redress from PSAC.[4]

This is insufficient to satisfy either the futility exception or the ripeness requirement. The plaintiffs, both in the amended complaint and in their pleadings in response to this motion, never contend that they appealed to PSAC. Additionally, the plaintiffs do not allege that they tried to seek just compensation in Commonwealth courts. Thus, the plaintiffs have not even one meaningful attempt at receiving compensation through local fora. As the plaintiffs have not applied for state remedies, they definitionally have not been denied compensation by the same. The motion to dismiss the plaintiffs' takings clause claims is accordingly GRANTED.

## IX.    Contracts Clause

The contracts clause provides that "No State shall … pass any …. Law impairing the Obligation of Contracts …." U.S. Const. art. I, § 10, cl. 1. Contracts clause claims are analyzed under two-part test that applies to both public and private contexts. Parella v. Retirement Bd. Of R.I. Employees, 173 F.3d 46, 59 (1st Cir. 1999). The test requires first that a state law has "operated as substantial impairment of a contractual relationship." Allied Structural Steel Co. v. Spannaus, 438 U.S. 234, 244 (1978). "This inquiry has three components: whether there is a contractual

---

[4] Section fourteen of Law 66 gives the Public Service Appellate Commission (PSAC):

> exclusive primary jurisdiction to address appeals arising as a result of actions taken or decisions made in accordance with this Chapter filed by employees covered or not covered by the … Public Service Labor Relations Act, as well as those field by nonunion employees of the Entities of the Executive Branch excluded from the application of the provisions of … the Public Service Human Resources Administration Act … , and employees of the Entities of the Executive Branch that do not have labor unions, but to whom the provisions of [the Public Service Human Resources Administration Act] apply.

The defendants indicate that the plaintiff employees fall under the category of "nonunion employees" excluded from the Public Service Human Resources Administration Act, and the plaintiffs do not contradict this classification. Ultimately, the conclusion here rests not on the plaintiff employees' specific status. Rather the conclusion rests on the lack of allegations in the amended complaint that plaintiffs' attempted to apply to PSAC and their silence in the complaint with respect to any unavailability of this forum.

relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." General Motors Corp. v. Romein, 503 U.S. 181, 186 (1992). Second, that impairment must not have been "reasonable and necessary to serve an important government purpose." See U.S. Trust Co. of N.Y. v. New Jersey, 431 U.S. 1, 25 (1977); Maine Ass'n of Retirees v. Bd. of Trustees of Maine Pub. Employees Ret. Sys, 758 F.3d 23, 29 (1st Cir. 2014). The defendants only challenge the first component; specifically, they argue that the plaintiffs' have not plausibly asserted a contractual relationship existed.[5] ECF No. 28, 26.

In the factual allegation section, the amended complaint alleges that the regulation "codified" the additional compensation. ECF No. 21, ¶ 24. The section devoted to the contracts clause claim states that the Regulation "is part of Plaintiffs' contract." Id. ¶ 94. The response states, "Plaintiffs have alleged that the defendants, pursuant to the Informative Bulletin, illegally and substantially impaired the contractual obligation agreed upon between Plaintiffs and the PRHTA under the Regulation." ECF No. 34, ¶ 100. The plaintiffs' sur-reply "affirms that their affected property interest has it [sic] source on [sic] the Regulation 02-017," and further states that "[i]n this case the Regulation 02-017, the employment contract and the 'surrounding circumstances' prove that there is a contract between Plaintiffs and codefendant PRHTA that warrants the payment of the monetary compensation." ECF No. 49, ¶ 27. The plaintiffs make reference to documents (e.g. the Regulation) that are not currently part of the record. On a motion to dismiss, the court can properly consider documents that are fairly incorporated into the complaint or integral to plaintiff's claims. See Nieto-Vicenty v. Valledor, 984 F.Supp.2d 17, 20 (D.P.R. 2013). Without these documents or clarity about their contents, the court cannot grant the defendants' motion at this juncture of the

---

[5] The defendants have not challenged here whether the impairment was substantial or whether the actions were reasonable and necessary to meet the alleged economic crisis in Puerto Rico.

proceedings. The motion to dismiss the contracts clause claim is therefore DENIED without prejudice.

**X.    Equal Protection**

Under the equal protection clause, "No state shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 6. In order to establish an equal protection claim, plaintiffs that are not alleging discrimination based on "'typical' impermissible categories such as race or religion," must show three things: first, that they were "intentionally treated differently from others similarly situated;" second, "that no rational basis exists for that difference in treatment;" and third "that the different treatment was based on a malicious or bad faith intent to injure." Buchanan v. Maine, 469 F.3d 158, 178 (1st Cir. 2006).

The test for establishing that individuals or entities are similarly situated

"is whether a prudent person would think them roughly equivalent and the protagonists similarly situated. Much as in the lawyer's art of distinguishing cases, the 'relevant aspects' are those factual elements which determine whether reasoned analogy supports, or demands, a like result. Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples."

Barrington Cove Ltd. P'ship v. Rhode Island Hous. & Mortgage Fin. Corp., 246 F.3d 1, 8 (1st Cir. 2001) (quoting Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 19 (1st Cir. 1989) overruled on other grounds by Educadores Puertorriqueños en Acción v. Hernández, 367 F.3d 61 (1st Cir. 2004)). To meet this standard the plaintiffs must allege that they were similarly situated "in all relevant aspects" to other PRHTA employees who did not experience a change in compensation. Id.

The plaintiffs here allege the opposite. A large portion of the amended complaint insists that their position is fundamentally different from other employees in work hours, schedule, and working conditions. The plaintiffs' detail their efforts to have the PRHTA acknowledge and recognize these distinctions and increase their compensation accordingly. Specifically, the amended

complaint alleges that "[a] couple of decades ago, the organizational structure of the PRHTA did not distinguish from an engineer that worked in the "field" and those that worked in the airconditioned offices in Minillas," but that now PRHTA has "recognized that, the difference in work realized between the Project administrators and Supervisors and the rest of PRHTA's employees merited additional compensation as the Administrators' and Supervisors' additional functions risked their respective family relationships while endangering their lives and health." ECF No. 21, ¶¶ 18, 25. In the opposition to the motion to dismiss, plaintiffs' further clarify this point stating, "the Amended Complaint does differentiate Plaintiffs employees from other PRHTA's employees, not only by function but also by location of work." ECF No. 34, 45 n.10. Thus, in the language of the metaphor, plaintiffs are insisting that they are oranges.

In the section of the amended complaint dedicated to the equal protection claim, it states that, "Defendants' Informative Bulletin violates the guarantee of equal protection of the laws contained in the Fourteenth Amendment of the United States Constitution, inasmuch as it discriminates against its co-Plaintiffs employees without any justification between such employees and the rest of its employees." ECF No. 21, ¶103. This is the kind of "threadbare recital[ ] of the elements of a cause of action, supported by mere conclusory statements" that Twombly stated "do not suffice" to survive a motion to dismiss. 550 U.S. at 555. This single, conclusory reference to similarly situated individuals does not render plaintiffs' claim plausible. The motion to dismiss the plaintiffs' equal protection claims is accordingly GRANTED.

## XI.   Conclusion

For the foregoing reasons, the defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**, as follows. With respect to the plaintiff employees' spouses' and the conjugal partnerships' section 1983 claims, the defendants' motion to dismiss is **GRANTED**, and

consequently their substantive due process, procedural due process, takings clause, contracts clause, and equal protection claims are dismissed with prejudice. With respect to the plaintiff employees' substantive due process, takings clause, and equal protection claims, the defendants' motion to dismiss is **GRANTED**, and the claims are dismissed with prejudice. With respect to the defendants' request for <u>Pullman</u> abstention and the plaintiff employees' procedural due process claim, the defendants' motion to dismiss is **DENIED.** With respect to the plaintiff employees' contracts clause claim, the defendants' motion to dismiss is **DENIED WITHOUT PREJUDICE**.

The plaintiff employees' procedural due process and contracts clause claims thereby remain active.  As the defendants do not make any specific argument as to the plaintiffs' claims under the "Puerto Rico Minimum Wage, Regular and Sick Leave Act," P.R. Law No. 180 of July 27, 1998, the "Puerto Rico Anti-Discrimination Act," P.R. Law No. 100 of June 30, 1995, and the Puerto Rico Civil Code Article 1802, these claims also remain active.

IT IS SO ORDERED

In San Juan, Puerto Rico, this 14th of January, 2016.

s/Marcos E. López
U.S. Magistrate Judge
